United States of America v. Posobilov, Mr. Abdulaziz being on submission. May it please the court, my name is Steve Zissou. I am Mr. Posobilov's appellate counsel. I also represented him in the lower court for all of the substantive proceedings. I'm going to, if I may, use most of my time to address the sentencing point so that I can explain to this court why I think it is an important issue, not simply for Mr. Posobilov of course, but for the jurisprudence, the sentencing jurisprudence in this circuit. And if I might, I'm just going to take us for a walk down memory lane, if I might, back to 1989, the first day or the first time I was sworn in or had the privilege of being sworn in to a federal district court in the Eastern District, I think it was Southern District the same day. It also happened to be the same year that Mistretto was decided, the case where the Supreme Court turned away all the substantive challenges until Booker to the United States Sentencing Council. I don't know about the judges, but it took me a while to know the difference between an adjustment and a departure. In fact, I think it was Judge Jacob sitting in that very chair, Your Honor, who first said to me, you don't mean an adjustment, you mean a departure, and the light went on. I said, wait, now I get it. Now I'm getting there. And as Your Honors recall, there was some institutional hostility toward the guidelines of Mistretto. But before long, we all spoke the language of the guidelines. And when a client would come into the office, a first-time nonviolent offender who was gainfully employed with a family, and his guideline range called for a release, our reaction is, sorry, guidelines are the guidelines. And we nevertheless try, go before a judge in the district court, and we make the best arguments we could, knowing that they probably do not fall outside the heartland, and knowing that the client was unable or unwilling to cooperate, the judges would say, sorry, guidelines are the guidelines. Eventually though, Booker was decided, it was I think almost fourteen years ago today, it was February 2005 if I recall correctly. And again, there was, as Your Honors may recall, this institutional angst, if you will, not hostility per se, but angst. What was going to happen? How was this radical change going to swallow up the district court? What were judges going to do? And as Your Honors I'm sure remember, there was this fear that Congress was going to suddenly start to enact mandatory minimums in a vast majority of the United States Code, taking completely away the discretion of the district judges. Indeed, again in this very courtroom in the United States against Rattabelli, one of the judges posed a sentence of probation and a year of house arrest in a case where the guidelines were 27 to 33 months. Government appealed, and we thought, okay, we've got a winner here. And it was 2006, I was in this courtroom, and the winner we thought we had was met with what I'll call, since we've been talking about baseball, a high hard one inside, right under my chin. When one of the judges participating by video said in unequivocal words, this man should be in jail. And before long, he was. Court of Appeals reversed and vacated, and Judge Grasse imposed a sentence of 18 months instead, taking into consideration only the fact that the client had been on house arrest for a year. That was where it ended. There is no question, had that case been decided today, I don't even think the government would have appealed, nor do I think this court would have vacated the sentence. What I recall about it was the first words of the opinion, and it's what makes me feel for this case that it is in the same category, and it was this sentence. This is an important case. It was important because for whatever the reason at the time, the circuits were trying to control the damage, if you will, at least that was my view. Why do you think in this case, on the facts before us, the court deviated sufficiently that we should step in? There are so many reasons they're hard to count. The first is the judge has simply ignored the overwhelming mitigating 3553A factors and simply, frankly, there was no record below other than my argument, similar to the ones I'm making here today. Indeed, as one of the points that I made early and often, the client was desperate to plead guilty. There's never been any dispute about it. The government knew it. They just wouldn't make him a plea offer unless the architect of the fraud, Alexander Fishenko, the person who benefited by most by also pled guilty. If he was willing to plead guilty, the government was... Your client could have pled guilty on his own, couldn't he? He could have pled guilty to the indictment had he been actually guilty of every count in the indictment, but since he wasn't, despite what the jury said, it was difficult for him to go before a court and lie and say that he was guilty for every offense. Remember, there are multiple counts in this indictment, at least two of them. At least two of them, there were substantive reasons to... How many of them was he acquitted? He was not acquitted of any of them. Therefore, was he entitled to the acceptance of responsibility? He thought he was innocent, but apparently the jury didn't. The jury did not, but... So the government doesn't have to agree to his desire to plead guilty to a few, but not all, right? No, of course not. No, not at all. As a matter of fact, I commend Mr. Tucker and his team for keeping Mr. Posobiloff in the case so that their case against the other defendants who went to trial was stronger. That was the reasoning here. That's perfectly okay. It's an acceptable thing for an attorney for the government to do. If I was in his position, I would have done the same thing, but the reason why it's a red herring is that means it's also a 3553A factor that the court must take into consideration. But what did Judge Johnson do when that issue came up at the end of a long sentencing proceeding? It's A15 in our appendix, the court. Well, for the record, I will state that Mr. Posobiloff, through his counsel, had wanted to plead guilty throughout the course of this litigation and nothing could be worked out. I will put that on the record. However, I am dealing with a defendant who went to trial. Now, there's only one unmistakable conclusion one could reach by reading that. Mr. Posobiloff was punished for going to trial, and the court as a result ignored all of the 3553A factors that were helpful to him. We can list them. He wanted to plead guilty. He was, at the time of sentence, 63 years old. He had no criminal record. He had no money left. He was broke. I was appointed in the lower court. He was hardly the manager or organizer of the conspiracy. At most, he made $60,000 a newspaper. He didn't know Mr. Fischenko other than that. He was simply somebody who was trying to support his family. Was he guilty of substantial offenses? There's no question about that. But the point becomes, when do the guidelines stop being the tail that wags the dog? And I submit to you, it's up for this court to say. Thank you. You have reserved two minutes. Good morning, your honors, and may it please the court. My name is Richard Tucker. I'm an assistant United States attorney in the Eastern District of New York. I was also on the trial team in this case. I'm going to focus my remarks on counsel's statements. Obviously, if the court has any questions on any of the other issues, I'm happy to take those up. The principal point that I want to address from Mr. Zissou's eloquent statement is that Mr. Pozobiloff was punished for going to trial. And as your honors know far better than I, the reduction that one receives for acceptance of responsibility is an appropriate reduction because it is one of the factors that the court considers in deciding the risk of recidivism, whether justice has been done, whether the defendant has accounted for the things that he did. Not only did Mr. Pozobiloff not plead guilty in advance of trial, which as your honor notes, he certainly could have done, even at the time of sentencing, he was still saying things like, I made a lot, and just for the record, this is at Pozobiloff Appendix A-140, I made a lot of mistakes, but trust me, these mistakes were not intended or deliberate. This wasn't intentional mistakes. He says, what I did here, it's just my duty. So respectfully, Mr. Pozobiloff never accepted any sort of responsibility for his crimes. He put the government to his burden, that's his constitutional right. There was ample basis in the record to support Judge Johnson's finding that a reduction for acceptance was not appropriate here. Judge Johnson adopted the factual findings and recommendations in the pre-sentence report, and that was adequate to satisfy the requirements to show this court the basis for how he reached the sentence here. The only other point I want to make is that the characterization of Mr. Pozobiloff as some sort of minor player in this offense is completely untethered for the record. First off, the judge assessed points for being a manager or leader, an additional three points, which was not at issue here, but it was factually founded, because Mr. Pozobiloff was an employee at ARC Electronics from 2004 to 2012. And while it's certainly true that Mr. Vyshenko was the founder of that enterprise, Mr. Pozobiloff was the day-to-day manager. He managed all of the day-to-day operations, from invoicing to customer management, to destroying evidence of their crimes when they began... Does the record indicate why the government accepted a plea from the founder, but not from the manager? Do we have anything on the record to suggest why he got an offer from the government and the government did not do it in this? He did not receive an offer, Your Honor. He pled guilty to every single count of the indictment, Your Honor. That's exactly right. So I'm going to wrap up here, unless the Court has questions, but my point is simply this. Mr. Pozobiloff was not a bit player in this offense. He was critical. He was the day-to-day point guy. The crimes, the criminal enterprise that operated out of ARC would not have worked without him. So what Judge Johnson did was he looked at his criminal conduct, which I would submit is he was equally culpable, if not to some extent more culpable than Mr. Vyshenko, and then he took into account the fact that Mr. Vyshenko accepted responsibility. So the idea that this sentence shocks the conscience or takes us into a place where this Court should be seriously considering reversing Judge Johnson's sentence, I respectfully submit we're nowhere near that. And, Your Honors, I'm happy to answer any other questions you might have, but otherwise I'll rest my papers. Thank you. Thank you, Your Honors. A review of the sentencing record, I think, carefully reveals that Judge Johnson simply did not do the analysis required. So, at the very least, the case has to be remanded for a resentencing because it is— Don't we regularly assume that a judge has looked at the 3553A? Of course. But here, the 3553A factors were so unusual and completely unaddressed by Judge Johnson, other than to say that Mr. Pozobiloff wanted to plead guilty from the time he was acquitted. There's no weight to that. But here's really what the rub here is. Nobody is disputing. I certainly never disputed it. I wasn't the one who wanted to go to trial, nor was it my client. But there was no dispute that Mr. Pozobiloff was an important member of this conspiracy. Nobody's downing it. But Alexander Vyshenko pled guilty to the indictment. He was the architect of the fraud. He pled guilty on the eve of trial. He even pled guilty to being an agent of a foreign government, i.e., Russia, a charge that Mr. Pozobiloff did not even face. And for that, he gets 120 months, while Mr. Pozobiloff gets 135. Yes, but your client could, at that same point, have pled guilty. My client could not have pled guilty and truthfully stood before a judge. And keep in mind, Your Honors— Well, and that's just the point, that he had a right to fight that, and the government had a right to prove him guilty on that. But when somebody does that, for whatever reason, it has been decided that the guidelines diminution for acceptance of responsibility does not apply. You'll be sure. And the fact that the court gave or did not give him acceptance points is irrelevant, frankly, to me. But it's the 3553A factors that the court failed to consider. Again, the tail that wags the dog is not the guideline range or acceptance. The tail that wags the dog is the parsimony clause. And can the court say that the lower court considered all of the options available to us and imposed a sentence that was sufficient but not greater than necessary? I think not, Your Honor. Thank you both. We'll reserve decision. This is the last case, and we stand adjourned. Court is adjourned.